Eastern District of Kentucky
F I L E D

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LONDON

NOV 0 8 2006
AT LONDON
LESLIE G. WHITMER
CLERK U.S. DISTRICT COURT

CIVIL ACTION NO. 05-598-GWU

FERN SMITH, PLAINTIFF,

VS. **MEMORANDUM OPINION**

JO ANNE B. BARNHART,
COMMISSIONER OF SOCIAL SECURITY, DEFENDANT.

### INTRODUCTION

The plaintiff brought this action to obtain judicial review of an administrative denial of her applications for Disabled Widow's Insurance Benefits and Supplemental Security Income (SSI). The appeal is currently before the Court on cross-motions for summary judgment.

### LAW APPLICABLE TO DISABLED WIDOW'S INSURANCE BENEFITS

The medical evidence relating to such widow's insurance benefits claims filed on or after January 1, 1991, or applications pending on or after that date, are to be evaluated under the same standards as are applied to other Title II disability claims. Omnibus Budget Reconciliation Act (OBRA) of 1990, Pub. L. No. 101-508, Section 5103. Accordingly, a review of the principles applicable to judicial review of these other claims is necessary.[1]

---

[1] Other requirements for widow's benefits were not at issue in the present case.

1

The Sixth Circuit Court of Appeals has set out the steps applicable to judicial review of Social Security disability benefit cases:

1. Is the claimant currently engaged in substantial gainful activity? If yes, the claimant is not disabled. If no, proceed to Step 2. See 20 C.F.R. 404.1520(b), 416.920(b).

2. Does the claimant have any medically determinable physical or mental impairment(s)? If yes, proceed to Step 3. If no, the claimant is not disabled. See 20 C.F.R. 404.1508, 416.908.

3. Does the claimant have any severe impairment(s)--i.e., any impairment(s) significantly limiting the claimant's physical or mental ability to do basic work activities? If yes, proceed to Step 4. If no, the claimant is not disabled. See 20 C.F.R. 404.1520(c), 404.1521, 416.920(c), 461.921.

4. Can the claimant's severe impairment(s) be expected to result in death or last for a continuous period of at least 12 months? If yes, proceed to Step 5. If no, the claimant is not disabled. See 20 C.F.R. 404.920(d), 416.920(d).

5. Does the claimant have any impairment or combination of impairments meeting or equaling in severity an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Listing of Impairments)? If yes, the claimant is disabled. If no, proceed to Step 6. See 20 C.F.R. 404.1520(d), 404.1526(a), 416.920(d), 416.926(a).

6. Can the claimant, despite his impairment(s), considering his residual functional capacity and the physical and mental demands of the work he has done in the past, still perform this kind of past relevant work? If yes, the claimant was not disabled. If no, proceed to Step 7. See 20 C.F.R. 404.1520(e), 416.920(e).

2

>   7.  Can the claimant, despite his impairment(s), considering his residual functional capacity, age, education, and past work experience, do other work--i.e., any other substantial gainful activity which exists in the national economy? If yes, the claimant is not disabled. See 20 C.F.R. 404.1505(a), 404.1520(f)(1), 416.905(a), 416.920(f)(1).

Garner v. Heckler, 745 F.2d 383, 387 (6th Cir. 1984).

Applying this analysis, it must be remembered that the principles pertinent to the judicial review of administrative agency action apply. Review of the Commissioner's decision is limited in scope to determining whether the findings of fact made are supported by substantial evidence. Jones v. Secretary of Health and Human Services, 945 F.2d 1365, 1368-1369 (6th Cir. 1991). This "substantial evidence" is "such evidence as a reasonable mind shall accept as adequate to support a conclusion;" it is based on the record as a whole and must take into account whatever in the record fairly detracts from its weight. Garner, 745 F.2d at 387.

One of the detracting factors in the administrative decision may be the fact that the Commissioner has improperly failed to accord greater weight to a treating physician than to a doctor to whom the plaintiff was sent for the purpose of gathering information against his disability claim. Bowie v. Secretary, 679 F.2d 654, 656 (6th Cir. 1982). This presumes, of course, that the treating physician's opinion

3

is based on objective medical findings.  Cf. Houston v. Secretary of Health and Human Services, 736 F.2d 365, 367 (6th Cir. 1984); King v. Heckler, 742 F.2d 968, 973 (6th Cir. 1984).  Opinions of disability from a treating physician are binding on the trier of fact only if they are not contradicted by substantial evidence to the contrary.  Hardaway v. Secretary, 823 F.2d 922 (6th Cir. 1987).  These have long been well-settled principles within the Circuit.  Jones, 945 F.2d at 1370.

Another point to keep in mind is the standard by which the Commissioner may assess allegations of pain.  Consideration should be given to all the plaintiff's symptoms including pain, and the extent to which signs and findings confirm these symptoms.  20 C.F.R. Section 404.1529 (1991).  However, in evaluating a claimant's allegations of disabling pain:

> First, we examine whether there is objective medical evidence of an underlying medical condition.  If there is, we then examine:  (1) whether objective medical evidence confirms the severity of the alleged pain arising from the condition; or (2) whether the objectively established medical condition is of such a severity that it can reasonably be expected to produce the alleged disabling pain.

Duncan v. Secretary of Health and Human Services, 801 F.2d 847, 853 (6th Cir. 1986).

Another issue concerns the effect of proof that an impairment may be remedied by treatment.  The Sixth Circuit has held that such an impairment will not

4

serve as a basis for the ultimate finding of disability. Harris v. Secretary of Health and Human Services, 756 F.2d 431, 436 n.2 (6th Cir. 1984). However, the same result does not follow if the record is devoid of any evidence that the plaintiff would have regained his residual capacity for work if he had followed his doctor's instructions to do something or if the instructions were merely recommendations. Id. Accord, Johnson v. Secretary of Health and Human Services, 794 F.2d 1106, 1113 (6th Cir. 1986).

In reviewing the record, the Court must work with the medical evidence before it, despite the plaintiff's claims that he was unable to afford extensive medical work-ups. Gooch v. Secretary of Health and Human Services, 833 F.2d 589, 592 (6th Cir. 1987). Further, a failure to seek treatment for a period of time may be a factor to be considered against the plaintiff, Hale v. Secretary of Health and Human Services, 816 F.2d 1078, 1082 (6th Cir. 1987), unless a claimant simply has no way to afford or obtain treatment to remedy his condition, McKnight v. Sullivan, 927 F.2d 241, 242 (6th Cir. 1990).

Additional information concerning the specific steps in the test is in order.

Step six refers to the ability to return to one's past relevant category of work. Studaway v. Secretary, 815 F.2d 1074, 1076 (6th Cir. 1987). The plaintiff is said to make out a prima facie case by proving that he or she is unable to return to work.

Cf. Lashley v. Secretary of Health and Human Services, 708 F.2d 1048, 1053 (6th Cir. 1983). However, both 20 C.F.R. 416.965(a) and 20 C.F.R. 404.1563 provide that an individual with only off-and-on work experience is considered to have had no work experience at all. Thus, jobs held for only a brief tenure may not form the basis of the Commissioner's decision that the plaintiff has not made out its case. Id. at 1053.

Once the case is made, however, if the Commissioner has failed to properly prove that there is work in the national economy which the plaintiff can perform, then an award of benefits may, under certain circumstances, be had. E.g., Faucher v. Secretary of Health and Human Services, 17 F.3d 171 (6th Cir. 1994). One of the ways for the Commissioner to perform this task is through the use of the medical vocational guidelines which appear at 20 C.F.R. Part 404, Subpart P, Appendix 2 and analyze factors such as residual functional capacity, age, education and work experience.

One of the residual functional capacity levels used in the guidelines, called "light" level work, involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds; a job is listed in this category if it encompasses a great deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls; by definition, a

6

person capable of this level of activity must have the ability to do substantially all these activities. 20 C.F.R. 404.1567(b). "Sedentary work" is defined as having the capacity to lift no more than ten pounds at a time and occasionally lift or carry small articles and an occasional amount of walking and standing. 20 C.F.R. 404.1567(a), 416.967(a).

However, when a claimant suffers from an impairment "that significantly diminishes his capacity to work, but does not manifest itself as a limitation on strength, for example, where a claimant suffers from a mental illness . . . manipulative restrictions . . . or heightened sensitivity to environmental contaminants . . . rote application of the grid [guidelines] is inappropriate . . ." Abbott v. Sullivan, 905 F.2d 918, 926 (6th Cir. 1990). If this non-exertional impairment is significant, the Commissioner may still use the rules as a framework for decision-making, 20 C.F.R. Part 404, Subpart P, Appendix 2, Rule 200.00(e); however, merely using the term "framework" in the text of the decision is insufficient, if a fair reading of the record reveals that the agency relied entirely on the grid. Ibid. In such cases, the agency may be required to consult a vocational specialist. Damron v. Secretary, 778 F.2d 279, 282 (6th Cir. 1985). Even then, substantial evidence to support the Commissioner's decision may be produced through reliance on this expert testimony only if the hypothetical question given to the expert accurately portrays the plaintiff's

7

physical and mental impairments. <u>Varley v. Secretary of Health and Human Services</u>, 820 F.2d 777 (6th Cir. 1987).

## DISCUSSION

The plaintiff, Fern Smith, was found by an Administrative Law Judge (ALJ) to have "severe" impairments consisting of morbid obesity, diabetes mellitus, and hypertension. (Tr. 19). Nevertheless, based in part on the testimony of a vocational expert (VE), the ALJ determined that the plaintiff retained the residual functional capacity to perform a significant number of jobs existing in the economy and, therefore, was not entitled to benefits. (Tr. 22-6). The Appeals Council declined to review, and this action followed.

At an administrative hearing on August 4, 2003, the ALJ had asked the VE whether a person of the plaintiff's age of 57 years, work experience as a caregiver, night watchman, and delicatessen cook, and GED level education (but with estimated borderline intellectual functioning), could perform any jobs if she had no exertional limitations, but did have the following non-exertional restrictions. (Tr. 412-13). She: (1) could not climb ladders, ropes, or scaffolds; (2) could occasionally climb ramps or stairs, kneel, crouch, or crawl; (3) could "frequently" balance and stoop "due to primarily diabetes and weight problems," and should avoid heights and dangerous machinery due to her diabetes; (4) had a "fair" (defined as "satisfactory")

8

ability to follow work rules, relate to co-workers, tolerate the public, use judgment, interact with supervisors, tolerate work stresses, maintain attention and concentration, understand, remember, and carry out detailed but not complex job instructions, demonstrate reliability, and "behave emotionally stably [sic];" and (5) had a "poor" (defined as "limited but not totally precluded") ability to function independently and understand, remember, and carry out complex job instructions. (Tr. 413-14). All other mental categories were more than satisfactory. The VE responded that there were jobs that such a person could perform at the "light" and "medium" levels, and proceeded to give the numbers in which they existed in the state and national economies. (Tr. 414-15).

On appeal, this Court must determine whether the hypothetical factors are supported by substantial evidence, and that they fairly depict the plaintiff's condition.

The plaintiff, who testified that she had to obtain medical care at a free clinic due to lack of funds (Tr. 350), submitted office notes reflecting treatment for a variety of physical problems, including hypertension, diabetes, obesity, back pain, and ankle pain. (E.g., Tr. 70, 74, 83, 95, 205, 239, 251-2). None of her treating physicians offered indications of permanent functional restrictions, although Dr. James Bean, a one-time examining neurosurgeon, suggested in August, 2000 that the plaintiff was embellishing her symptoms for the purpose of establishing "liability" after a motor

9

vehicle accident. (Tr. 188). In any case, the plaintiff continued to make the same complaints for the next several years to treating sources, and x-rays taken in 2000 did show mild degenerative changes of the right shoulder and cervical spine and moderate degenerative changes of the thoracic spine, along with unspecified degenerative changes of the lumbosacral spine. (Tr. 181,183).

The only specific opinions from an examiner regarding functional capacity were made by Dr. Divyesh Bhakta, who conducted a consultative examination of Mrs. Smith on September 15, 2001. Dr. Bhakta noted her complaints of back pain with numbness down both legs, intermittent tingling of the hands, and blurred vision. (Tr. 253). His examination, though generally unremarkable, did show some limitations of range of motion in flexion and extension of the back and range of motion of the knees. (Tr. 263). He reviewed x-rays from July, 2000 and obtained a new x-ray of the lumbosacral spine showing mild degenerative changes. (Tr. 256). He completed a functional capacity assessment stating that the plaintiff had no exertional limitations, and could "occasionally" (defined as "from very little up to one-third of an eight-hour workday") climb, crouch, crawl, and stoop due to obesity. (Tr. 258-60).

Although the ALJ's functional capacity finding was similar to Dr. Bhakta's, it differed significantly in omitting a restriction on "occasional" stooping. The

10

hypothetical question stated that the plaintiff could "frequently" balance and stoop. (Tr. 413). This term was not defined in the hypothetical question, but "frequently" is defined in Social Security Ruling (SSR) 85-15 as meaning "from one-third to two-thirds of the time." SSR 85-15, p. 7. Therefore, it is clear that the hypothetical question provided significantly less restriction on stooping than given in the uncontradicted opinion of the consultative examiner.

SSR 85-15 further provides that "[s]ome stooping (bending the body downward and forward by bending the spine at the waist) is required to do almost any kind of work... [and i]f a person can stoop occasionally (from very little up to one-third the time) in order to lift objects, the sedentary and light occupational base is virtually intact [;h]owever, because of the lifting required for most medium, heavy, and very heavy jobs a person must be able to stoop frequently [and an] inability to do so would substantially affect the more strenuous portion of the occupational base." SSR 85-15, p. 7. Since the VE was describing jobs at both the light and medium levels, and did not break out the job numbers between the two levels of exertion, the variation between the limitation on stooping given in the hypothetical question and the amount of stooping allowed by the consultative medical source could have a substantial effect on the number of jobs available. Moreover, as the Court has noted previously, SSR 85-15 discusses the effect of non-exertional

11

restrictions on the occupational base in isolation and where, as here, <u>several</u> non-exertional restrictions are involved, the interaction between them should be evaluated by a VE.

In addition to arguing that the ALJ's functional capacity finding was flawed, the plaintiff raises issues regarding the age of Dr. Bhakta's evaluation, which was more than two years before the ALJ issued his decision, and challenges the ALJ's failure to find the existence of a "severe" mental impairment. On the first issue, the Court notes that it is the plaintiff's burden to prove his own case and, as noted in the Applicable Law section of this opinion, the Sixth Circuit has held that the Court must work with the evidence that is before it, even if the plaintiff cannot afford medical testing.[2] On the second issue, the defendant correctly points out that the ALJ, after obtaining testimony from a medical expert (ME) at the 2003 administrative hearing, clearly considered the plaintiffs depression in his decision, and found significant restrictions based on mental issues (Tr. 21-3). The plaintiff objects that the failure to find a "severe" mental impairment did prejudice her case, even though restrictions were found based on depression, because it prevented the ALJ from evaluating her

---

[2]The plaintiff correctly points out that Dr. Bhakta did not mention in his review of the 2000 x-rays that "moderate" degenerative changes were found in the thoracic spine, an issue the defendant may wish to address on remand.

12

entitlement to presumptive disability at Step Three of the sequential evaluation. However, the plaintiff has not offered any evidence that she would meet or equal one of the Commissioner's Listings of Impairment, and neither state agency reviewing psychologist Jay Athy or the ME indicated that a Listing was met or equaled, either. (Tr. 103-16, 222-35).

The decision will be remanded for further consideration.

This the ___8___ day of November, 2006.

G. WIX UNTHANK
SENIOR JUDGE

13